**Karlton L. DANIEL, Plaintiff,**

v.

**Tom ROLFS & Kay Walter, Defendants.**

**No. CS–96–353–JLQ.**

United States District Court,
E.D. Washington.

Dec. 11, 1998.

Order Denying Reconsideration
Jan. 4, 1999.

the failure of the Defendants to object to the Plaintiff's Motion is deemed to be consent to the granting thereof. By reason thereof, **IT IS HEREBY ORDERED** that the Plaintiff's Motion To Publish be and the same is hereby **GRANTED.**

**IT IS SO ORDERED.** The Clerk is directed to enter this order and to furnish copies to counsel and the Plaintiff.

## ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

**BEFORE THE COURT** are Defendants' Motion for Summary Judgment (Ct.Rec.26) and Plaintiff's Cross-Motion for Summary Judgment (Ct.Rec.43), heard without oral argument on September 2, 1998. Plaintiff is proceeding pro se. Assistant Attorney General Mary E. Fairhurst represents Defendants. Having reviewed the record, and being fully advised in the matter, **IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (Ct.Rec.26) is **GRANTED** in part and Plaintiff's Cross-Motion for Summary Judgment (Ct.Rec.43) is **GRANTED** in part for the following reasons.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Karlton L. Daniel is currently incarcerated at McNeil Island Corrections Center. At the time Plaintiff filed his complaint, June 19, 1996, he was incarcerated at Airway Heights Corrections Center (AHCC) where he had been confined since November 28, 1995. Prior to AHCC, Plaintiff had been incarcerated at Washington State Penitentiary (WSP), where on November 17, 1995 he married Evie Jeannette Kimble, a woman he claims to have known since 1985.

Plaintiff has not participated in the Extended Family Visitation (EFV) program at any of the institutions in which he has been incarcerated. Plaintiff's eligibility for participation in the EFV program is governed by the Extended Family Visitation Directive, DOP 590.100.

In February 13, 1995, DOP 590.100 was revised. The impetus for the new and more

Karltin L. Daniel, Steilacoom, WA, pro se.

Penelope Smith Nerup, Mary E. Fairhurst, Attorney General of Washington, Criminal Justice Division, Olympia, WA, for Defendants.

## ORDER GRANTING MOTION TO PUBLISH

QUACKENBUSH, Senior District Judge.

On November 9, 1998, Plaintiff filed a Motion To Publish this court's Opinion and Order dated September 16, 1998 which remanded the Plaintiff's action seeking Extended Family Visits to the Defendants for further consideration.

A copy of Plaintiff's Motion To Publish was served upon counsel for the Defendants and no objection to Plaintiff's Motion To Publish was filed. Pursuant to Local Rule 7.1(h)(5),

stringent revised directive was a serious incident at another correctional facility during an extended family visit. The incident occurred at the Clallam Bay Corrections Center during a family visit on January 7, 1995. The inmate involved held his spouse at knife point during an extended family visit, attacked and stabbed her, and held her hostage. The inmate was shot during the incident.

As a result of the Clallam Bay incident, members of the Washington Legislature during the 1995 session introduced a measure that would have completely precluded extended family visitation in Washington prisons. However, instead of passing such a law, the Washington Legislature passed, and the Governor signed, House Bill 2010, containing a provision that required the Department of Corrections to develop a uniform policy governing "the privilege of extended family visitation." *See* RCW 72.09.490.

As a result of House Bill 2010, the Division of Prisons revised the directive governing extended family visits, DOP 590.100. The revised directive became effective February 13, 1995. As revised, DOP Directive 590.100 provides that extended family visits for eligible offenders and their immediate families must be approved by the Superintendent, who has the authority to approve, deny, suspend, or terminate visits. DOP 590.100 ("If it is determined there is a reason to believe that an offender, although he/she meets all other eligibility requirements, is a danger to him/herself, the visitor(s), or to the orderly operation of the program, the Superintendent may exclude the offender from the program.").

The directive further eliminates "maximum, close custody, and death row offenders" from participating in the program, and restricts extended family visits in a number of other categories. The directive includes a restriction that "[o]ffenders may be excluded from participation if they have a documented history of domestic violence against any person." Additionally, the directive provides that only those spouses who were legally married to the offenders prior to incarceration for the current crime of conviction are eligible for extended family visitation. *Id.*

On February 24, 1995, Tom Rolfs, Director of the Division of Prisons, issued and circulated the new EFV directive as well as a policy statement governing the implementation of the new EFV directive. In the policy statement, Rolfs expressly recognized the extensiveness of the directive's significant revisions and encouraged the superintendents to take the necessary steps to ensure that the revised directive be implemented "with the sensitivity and necessity of its contents in mind." The policy statement provided two guidelines for implementing the newly revised directive.

The first guideline requires the Prison Superintendents to review each inmate currently approved for participation in the EFV program pursuant to the pre-revision directive to determine if he/she meets the new criteria. It also allows the Superintendent to disapprove any inmate currently participating who failed to meet the revised directive's provisions.

The second guideline allows the Superintendents to make one-time exceptions for inmates who do not meet the revised directive's requirements. Specifically, this "grandfathering" provision provides the Superintendents with the discretion to approve inmates who had (1) either already been participating in the program, or had made application to the program prior to January 10, 1995, and (2) were determined not to present safety or security concerns for the program or participants. The "grandfathering" clause does not grant the superintendents discretion to consider any other inmate for participation in the program.

Here, Plaintiff was denied participation in the EFV program while at the Airway Heights Corrections Center. (Ct.Rec.1, Ex. 17.) Ms. Walter, the Superintendent of the Airway Heights Corrections Center, Washington Department of Corrections, states that Plaintiff was not eligible for the "grandfathering" exception to the revised DOP 590.100. because his marriage took place while he was incarcerated.[1] (See Ct. Rec. 50,

1. Plaintiff's claim against Ms. Walter is not mooted by his transfer to McNeil Island Corrections Center, as Defendants assert, because the denial by Ms. Walter continues to affect Plaintiff's eligibility for the program pursuant to DOP 590.100(E)(4). *See County of Los Angeles v.*

Walter Aff., Ex. H at 2.) Further, Ms. Walter states that Plaintiff did not qualify for the grandfathering exception because he had not previously participated in the EFV program. (Ct. Rec. 51, Walter Aff. at 2 ¶¶ 3,4 and 7.) Finally, Ms. Walter, by stating that an offender must have a family with whom to have visits at the time he/she makes application to the EFV program, implicitly asserts that Plaintiff also did not qualify for the grandfathering exception because he had not submitted an application for participation in the program, while married, prior to January 10, 1995. (See Ct. Rec. 55, Walter Supp. Aff., Ex. H at 3–4 ¶ 14.) At no time have Defendants asserted that Plaintiff did not qualify for the grandfathering exception because his participation would present security or safety concerns.

On June 19, 1996, Plaintiff filed this action pursuant to 42 U.S.C. § 1983 claiming his constitutional rights were violated when AHCC denied him participation in the EFV program with his wife. This court previously dismissed Plaintiff's claims regarding separation of powers and the ex post facto clause with prejudice. (Ct.Rec.2.) However, the court found that Plaintiff had arguably stated sufficient facts to invoke federal subject matter jurisdiction over his claim that he had been denied equal protection.

Specifically, Plaintiff alleges Tom Rolfs, the Director of the Division of Prisons, Washington Department of Corrections, and Kay Walter, the Superintendent of the Airway Heights Corrections Center, Washington Department of Corrections, while acting under color of state law deprived him of his right to equal protection by (1) refusing to allow him to participate in the EFV program because he became married while incarcerated and (2) refusing to consider him for the grandfathering exception to DOP 590.100 because he had not previously been participating in the program nor had he made application to the program prior to January 10, 1995.

On March 21, 1997, Defendants filed a Motion for Summary Judgment (Ct.Rec.26). On June 23, 1997, Plaintiff filed a Cross–Motion for Summary Judgment (Ct.Rec.43). On August 15, 1997, the court reserved rul-

ing on the motions for summary judgment directing Defendants to specifically respond to Plaintiff's claim that there is no legitimate penological purpose for treating inmates differently based on the date on which they made application to the EFV program. (Ct. Rec.53.) The Defendants' subsequent briefing failed to address the issue, and thus on October 16, 1997, the court again specifically directed Defendants to submit briefing outlining "the rationale for implementing an exception to DOP 590.100 which, on its face, provides for treating inmates married post-incarceration who had submitted their applications for participation in the Extended Family Visitation program prior to January 10, 1995 differently than inmates married post-incarceration who had not submitted applications by that date." (Ct.Rec.58.) On October 23, 1997, Defendants filed their Second Supplemental Brief in Support of Motion for Summary Judgment (Ct.Rec.59), to which Plaintiff has responded (Ct.Rec.60).

## DISCUSSION

### I. Summary Judgment Standard

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the material facts before the court. *Zweig v. Hearst Corp.*, 521 F.2d 1129 (9th Cir.), *cert. denied*, 423 U.S. 1025, 96 S.Ct. 469, 46 L.Ed.2d 399 (1975). The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The moving party is entitled to summary judgment when, viewing the evidence and the inferences arising therefrom in favor of the nonmoving party, there are no genuine issues of material fact in dispute, and it is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Semegen v. Weidner*, 780 F.2d 727 (9th Cir.1985). However, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See v. Durang*, 711 F.2d 141 (9th Cir.1983).

*Davis*, 440 U.S. 625, 631, 99 S.Ct. 1379, 59    L.Ed.2d 642 (1979).

## II. 42 U.S.C. § 1983

Plaintiff filed his claim under the provisions of the Civil Rights Act, 42 U.S.C. § 1983. In order to sustain a claim under 42 U.S.C. § 1983, a plaintiff must show that a defendant acted under color of state law to deprive the plaintiff of a privilege specifically enumerated under the United States Constitution or the laws of the United States. 42 U.S.C. § 1983; *Parratt v. Taylor*, 451 U.S. 527, 532, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). Prisoners, as all individuals, are afforded the protections of the Civil Rights Act. *Toussaint v. McCarthy*, 801 F.2d 1080 (9th Cir.1986). However, "[t]he duty to protect inmates' constitutional rights ... does not confer the power to manage prisons, for which courts are ill-equipped, or the capacity to second-guess prison administrators." *Id.* at 1086.

■ Here, Plaintiff alleges that Defendants have deprived him of his right to equal protection. Unquestionably, the Fourteenth Amendment right to equal protection survives incarceration. *See e.g., Baumann v. Arizona Dep't of Corrections*, 754 F.2d 841 (9th Cir.1985). However, where, as is the case here, a plaintiff does not allege a violation of a fundamental right or the existence of a suspect classification, prison officials need only show that their policies bear a rational relation to a legitimate penological interest in order to satisfy the equal protection clause. *See Turner v. Safley*, 482 U.S. 78, 89–90, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987); *Coakley v. Murphy*, 884 F.2d 1218, 1221–22 (9th Cir.1989). Accordingly, the proper inquiry in this case, is whether various limitations on participation in the EFV program as imposed by the revised DOP 590.100 reasonably further a legitimate penological interest.

■ In its inquiry, however, this court must accord wide-ranging deference to prison administrators "in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 547, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). Likewise, prison officials must have the ability to anticipate security problems and adopt innovative policies as means of addressing such problems and the courts must not become unnecessarily involved in the affairs of prison administration. *Procunier v. Martinez*, 416 U.S. 396, 405, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974). Indeed, decisions regarding prison security are "peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters." *Pell v. Procunier*, 417 U.S. 817, 827, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974). It is with these considerations in mind, that the court considers Plaintiff's claims.

### A. Restricting EFVs to Inmates Married Prior to Incarceration Bears a Rational Relationship to a Legitimate Penological Interest.

Pursuant to revised DOP 590.100, only those spouses who were legally married to the offenders prior to incarceration for the current crime of conviction are eligible for extended family visitation. The stated purpose of DOP 590.100 is to "provide eligible inmates the opportunity to maintain relationships with authorized family members; to maintain marriages which existed prior to incarceration in DOC; and to provide an incentive for inmates to maintain a positive behavior and attitude while incarcerated."

EFVs, which usually occur in a mobile home-type facility adjacent to the prison grounds, necessarily present increased safety concerns. Prisoners are allowed to meet privately with their spouses and/or families in a setting that is less structured than that of a prison visiting room. Thus, because of the nature of the program, prison officials must retain discretion in selecting which prisoners will participate in the program and which prisoners will not. Restrictions on participation in the program are aimed at maintaining the safety and orderly operation of the prison facilities and in protecting the safety of prison inmates, staff, and visitors. (Ct.Rec.28.)

■ According to Ms. Walter, with respect to those inmates married after incarceration,

there is no existing family relation for the prison to attempt to preserve. Thus, given the safety risks inherent in the EFV program and the deference afforded prison officials in their decisions concerning safety risks, the director's decision in this case to limit EFV participation to those inmates married prior to incarceration is rational. Further, Ms. Walter states that most of the marriages which occur after incarceration follow a "pen-pal" courtship. Thus, the spouse is not familiar with the inmate's behavior and may not be aware of the inmate's full criminal history. Accordingly, Ms. Walter concludes the potential for violence against the unknowing spouse is a safety risk—a risk she is not willing to assume. (See Ct. Rec. 55, Walter Aff., Ex. H at 3.) A prison institution has a legitimate penological interest in ensuring the safety of prison inmates, staff and visitors. *See Block v. Rutherford,* 468 U.S. 576, 586, 104 S.Ct. 3227, 82 L.Ed.2d 438 (1984).

■ As Defendants have proffered legitimate penological interests which are furthered by differentiating between inmates married after incarceration and inmates married prior to incarceration, such differentiation is not constitutionally infirm. Accordingly, Defendants' Motion for Summary Judgment is **GRANTED** to the extent that DOP 590.100's eligibility requirement that inmates be married prior to incarceration for the current crime of conviction does not violate the Fourteenth Amendment's right to equal protection.

**B. Limiting the Scope of the Grandfathering Provision to Allow Only Those Inmates Previously Participating in EFVs to Continue Despite Their Failure to Meet the Revised DOP 590.100 Is Reasonably Related to a Legitimate Penological Interest.**

The grandfathering exceptions to revised DOP 590.100 grant the prison superintendent the discretion to approve prisoners who were already successfully participating in the program to continue their participation, regardless of when the inmates were married. Thus, DOP 590.100 clearly allows the superintendents to differentiate between inmates successfully participating in EFVs prior to

January 10, 1995 and inmates who had never participated in the EFV program.

However, because differentiating between inmates with a positive "track-record" of good behavior during EFVs and those with no track-record is reasonably related to furthering the state's legitimate penological purpose of minimizing the attendant risk to inmates, visitors and staff which the EFV program presents, such differentiation does not violate equal protection. (See Ct. Rec. 55, Walter Supp. Aff., Ex. H at 2; Ct. Rec. 228, Ex. F at 5.) Accordingly, Defendants' Motion for Summary Judgment is GRANTED to the extent that DOP 590.100's grandfathering clause allowing inmates participating in the program prior to January 10, 1995 to be eligible for renewed participation despite not meeting the requirements of the revised directive does not violate the Fourteenth Amendment right to equal protection.

**C. The Issue of Defendants' Unequal Treatment of Inmates Depending on the Date of an Inmate's Application for Participation in the EFV Program Is Not Reached since It Is Uncontroverted That Plaintiff Submitted His Application for EFVs in 1994.**

Finally, the grandfathering clause written into revised DOP 590.100 also grants the prison superintendent the discretion to allow prisoners who had made application to the EFV program prior to January 10, 1995 to be considered for the program under the previous less restrictive requirements, while those inmates who had not yet made application were required to satisfy the new more onerous requirements in order to be considered eligible for participation. Thus, while an inmate married while incarcerated is not eligible for participation in the EFV program pursuant to revised DOP 590.100, that inmate is nonetheless eligible for participation pursuant to the grandfathering clause, if the inmate submitted his application for the EFV program prior to January 10, 1995. Accordingly, DOP 590.100 clearly allows superintendents to differentiate between inmates who had made application prior to January 10,

1995 and inmates who had not submitted their applications prior to that date.

■ Nonetheless, despite Defendants' unequal treatment of inmates in this regard, it is well-settled that a court should refrain from deciding a constitutional issue when a non-constitutional ground for decision is available. *Wolston v. Reader's Digest Ass'n, Inc.*, 443 U.S. 157, 161 n. 2, 99 S.Ct. 2701, 61 L.Ed.2d 450 (1979). Here, since Plaintiff has submitted uncontroverted evidence that he, in fact, submitted application for participation in the EFV program prior to January 10, 1995 and thus was eligible for "grandfathering," it is not necessary for the court to decide whether such treatment is constitutionally impermissible. (See generally Pl.'s Statement of Facts, Ct. Rec. 44.)

Plaintiff declares that in July 1994, after completing the "Inmate and Family Survival Program," he submitted his application for marriage and for participation in the EFV program. (Ct. Rec. 45 ¶ 3.) In addition, Jeannette Daniels (Plaintiff's wife), declares that in July of 1994, she mailed to Plaintiff certified copies of her divorce decree and birth certificate, as well as the children's birth certificates, as required for the marriage and EFV applications. (Ct. Rec. 46 ¶ 2.)

Approximately one month after submitting his applications, Plaintiff asked Mr. Alt, his counselor at WSP, whether his applications had been approved. (Ct. Rec. 45 ¶ 4.) Mr. Alt replied that he had not heard anything. (Ct. Rec. 45 ¶ 4.) Plaintiff continued to inquire into the status of his applications weekly. (Ct. Rec. 45 ¶ 4.) By November 1994, Plaintiff was beginning to be concerned because he wanted the marriage to take place in January 1995. (Ct. Rec. 45 ¶ 4.) He was subsequently informed by Mr. Alt that his applications for marriage and the EFV program had been lost. (Ct. Rec. 45 ¶ 4.) Mr. Alt supplied Plaintiff with new applications to be filled out. (Ct. Rec. 45 ¶ 4.)

When Ms. Daniels heard that the applications had been lost, she phoned Mr. Alt asking who would pay the cost of obtaining new certificates. (Ct. Rec. 46 ¶ 3.) Ms. Daniels declares that Mr. Alt apologized for the loss of the applications and promised that if the new packet was completed, it would be expeditiously approved. (Ct. Rec. 46 ¶ 3.)

In December of 1994, Ms. Daniels mailed the new certificates and required documents to Mr. Alt. (Ct. Rec. 46 ¶ 4.) She also states that she called to confirm that Mr. Alt had in fact received the documents, a week after she mailed them. (Ct. Rec. 46 ¶ 3.) Mr. Alt assured Ms. Daniels that he had received the documents and would be submitting the information to the unit classification committee for approval within the week. (Ct. Rec. 46 ¶ 3.) Plaintiff states that he submitted the rest of the application to Mr. Alt and was told by Mr. Alt that all the necessary documents were "there and in order." (Ct. Rec. 45 ¶ 5.)

Plaintiff was eventually married in November of 1995. (Ct.Rec.1, Ex. 14.) Eleven days later he was transferred to Airway Heights Corrections Center. He was informed by his counselor at AHCC, that he was ineligible for participation in the EFV program pursuant to revised DOP 590.100, because Plaintiff had been married after incarceration.

On January 4, 1996, Plaintiff filed a grievance noting that "[a]ccording to DOP 590.100 ... anyone already participating or made application prior to January 10, 1995 are[sic] to be considered or excepted for participation as long as they meet the required criteria." (Ct.Rec.1, Ex. 16.) The complaint was returned to Plaintiff on the basis that it involved a non-grievable issue. *Id.* Plaintiff filed another complaint on January 10, 1996 on the same issue, which was also returned.

Plaintiff then wrote a letter directly to Kay Walter explaining the circumstances of his lost application, explaining that he had in fact submitted his application prior to January 10, 1995, and requesting participation in the EFV program. That letter was referred to Andrea D. Bynum, Assistant Director Division of Prisons. Ms. Bynum's reply does not directly deny Plaintiff's request, but states merely that DOP 590.100 is "implemented equally" and the criteria it uses "were selected to provide a policy that is credible to public standards." (Ct.Rec.1, Ex. 21.) Further, the letter states that there is no higher level of appeal. In Ms. Walter's affidavit to

this court, she states that Plaintiff was not eligible for participation in the EFV program pursuant to revised DOP 590.100 because he was married after his incarceration, and he was not eligible for the grandfathering provision because he had not previously participated in EFVs. (See Ct. Rec. 51, Walter Aff. at 2 ¶¶ 3,4 and 7.)

Defendants in their Response to Plaintiff's Cross–Motion for Summary Judgment (Ct. Rec.50) do not dispute any of the above facts, which are outlined in Plaintiff's Statement of Facts (Ct.Rec.44) and submitted in support of Plaintiff's Motion for Summary Judgment and in opposition to Defendants' Motion for Summary Judgment. Rather, Defendants argue in reply that "[i]n order to apply for EFVs, an offender must have a family with whom to have [EFVs] with." (Ct. Rec. 24 at 4.) Defendants' authority for that conclusion is an affidavit by Ms. Walter stating:

> Mr. Daniel claims that he applied for EFVs in January 1995 while he was incarcerated at the Washington State Penitentiary and, therefore, is eligible to be "grandfathered" under Tom Rolfs' memo. However, Mr. Daniel was not married at the time of his application so he had no spouse with whom to have EFVs. In order to apply, an offender must have had a family with whom to have EFVs on the date of the application. Otherwise, the situation is analogous to applying to take the Washington State Bar exam on the off chance that you might go to and complete law school some day.

(Ct. Rec. 55, Walter Supp. Aff., Ex. H at 3–4 ¶ 14.)

Pursuant to local rule, the court assumes the truth of Plaintiff's claim that he submitted application for participation in the EFV program in 1994. Local Rule 56.1(d) states:

> [i]n determining any motion for summary judgment, the Court may assume that the facts as claimed by the moving party are admitted to exist without controversy except as and to the extent that such facts

are controverted by the record as set forth in [LR 56(b) ].

Accordingly, being uncontroverted, the court assumes that Plaintiff submitted application for participation in the EFV program prior to January 10, 1995.

The directive governing the EFV program at the time Plaintiff submitted his application expressly permitted inmates anticipating marriage to submit their EFV applications prior to marriage. Revised DOP 590.100, effective date February 13, 1995, superseded DOP 590.100, effective date July 3[0],[2] 1992. (See revised DOP 590.100 at 15, Ct. Rec. 1, Ex. 1.) Therefore, in 1994 when Plaintiff submitted his application for participation in the EFV program the applicable directive was DOP 590.100, effective date of July 30, 1992, found in the record at Ct. Rec. 1, Ex. 11. Pursuant to that directive:

> An inmate anticipating marriage within the facility may submit an application for participation in the Extended Family Visiting Program to his/her counselor before the date of the marriage.

(Ct. Rec. 1, Ex. 11 at 5 ¶ 6.) Accordingly, as it is uncontroverted that Plaintiff submitted an application for participation in the EFV program prior to January 10, 1995, he was eligible for the "grandfathering" exception to revised DOP 590.100 since the directive under which he made application expressly allowed for application to be made prior to the date of the marriage by an inmate anticipating marriage. In this respect, Plaintiff's Motion for Summary Judgment is **GRANTED** and the case is remanded to the Department of Corrections in order that Plaintiff's application be processed, pursuant to DOP 590.100's grandfathering clause.

Further reason exists for the remand to Department of Corrections. Were it necessary for the court to reach the issue of whether the above grandfathering clause exception is rationally related to a legitimate penological purpose, the court would have to

---

**2.** The revised DOP 590.100 indicates that the directive supersedes DOP 590.100 with an effective date of July 3, 1992. However, since the original DOP 590.100 has an effective date of July 30, 1992, the court assumes that the revised directive contains a typographical error and the directive superseded is DOP 590.100 with an effective date of July 30, 1992. (See generally revised DOP 590.100, effective date February 13, 1995, Ct. Rec. 1, Ex. 1, and DOP 590.100, effective date July 30, 1992, Ct. Rec. 1, Ex. 12.)

conclude that it is not. There is simply nothing in the record which would support holding that Defendants' unequal treatment of inmates depending on the date on which an inmate submitted his application for participation in the EFV program is reasonably related to a furthering a legitimate penological purpose.

■ While clearly the right to equal protection does not preclude Defendants' differential treatment, it does require Defendants to justify the differential treatment by making a minimal showing that the unequal treatment is rationally related to furthering a legitimate penological purpose. Upon making such a showing, courts accord great deference to prison administrators' adoption and execution of policies and practices that in the administrators' judgment are necessary to preserve order and discipline and to maintain safety. *Bell v. Wolfish*, 441 U.S. 520, 547, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); *Procunier v. Martinez*, 416 U.S. 396, 405, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974).

Here, however, Defendants have not explained what penological purpose, in their judgment, is furthered by allowing those inmates who had submitted their applications by a certain date to be considered for participation even if they did not satisfy the revised directive's requirements while precluding from consideration those inmates who applied after that date. Clearly, an inmate who submitted an application on January 10, 1995 cannot be considered to present less of a safety threat to inmates, staff and visitors than an inmate who submitted an application on January 11, 1995. Therefore, unlike differentiating between inmates based on their "track-record" of good behavior or lack thereof, unequal treatment based on date of submission of the EFV application does not further the prisons' goal of minimizing the security and safety risks attendant with the EFV program.

The court *sua sponte* has twice reserved ruling on this issue and has directed the Defendants to provide their reasons for treating inmates differently based on the date on which an inmate submitted his application. (See Ct. Rec. 53; Ct. Rec 58 (directing briefing limited specifically to the "rationale for implementing an exception to DOP 590.100 which, on its face, provides for treat-ing inmates married post-incarceration who had submitted their applications for participation in the Extended Family Visitation program prior to January 10, 1995 differently from inmates married post-incarceration who had not submitted their applications by that date")). Nonetheless, despite having now had three opportunities to explain the penalogical interests which are believed to be advanced by this unequal treatment of inmates, Defendants have failed to provide any explanation.

Further, rather than providing a rational explanation for the disparate treatment of inmates as directed by the court, Defendants have instead explained in detail why the effective cut-off date of the grandfathering clause is January 10, 1995. Surely, Defendants do not believe that using a nonarbitrary date to classify inmates, who are otherwise similarly situated, justifies arbitrary disparate treatment of those two classes of inmates. Indeed, the right to equal protection would be a hollow right if that is all that is required to satisfy even rational basis review.

## CONCLUSION

Plaintiff has not demonstrated that his right to equal protection under the Fourteenth Amendment has been abridged by revised DOP 590.100's limitation that only inmates married prior to incarceration are eligible for participation. Plaintiff further fails to show that DOP 590.100's grandfathering exception for inmates already participating in the EFV program bears no reasonable relation to the legitimate goal of intelligently and safely managing the risks attendant in Washington's EFV program. The statements of Director Rolfs and Supervisor Walter clearly demonstrate the opposite.

However, because it is uncontroverted that Plaintiff, in anticipation of his impending marriage, submitted an application for participation in the EFV program as expressly permitted by DOP 590.100, Defendants erred in failing to consider him for participation in the EFV program, pursuant to the grandfathering provision of revised DOP 590.100. Accordingly,

**IT IS HEREBY ORDERED:**

Defendants' Motion for Summary Judgment (Ct.Rec.26) is **GRANTED** in part because Plaintiff's right to equal protection is not abridged by the fact that revised DOP 590.100 differentiates between inmates based on when they were married or by the fact that it differentiates between inmates based on whether they have a history of participation in the EFV program.

Plaintiff's Motion for Summary Judgment (Ct.Rec.23) is **GRANTED** in part since Plaintiff was erroneously excluded from being considered for participation in the EFV program, pursuant to DOP 590.100's grandfathering provision.

Accordingly, this case is remanded to Director of Prisons Tom Rolfs, who shall forthwith ensure that the Department of Corrections gives due consideration to Plaintiff's application for participation in the EFV program for the purpose of determining whether Plaintiff should be "grandfathered" into the program, with such determination to be made in conformance with the criteria outlined in the "grandfathering" exception memorandum. Once the Department of Corrections' decision is filed with the court, after due consideration having been given to the relevant criteria, Plaintiff may proceed further if necessary. In the interim, this file shall be closed.

**IT IS SO ORDERED.** The Clerk is hereby directed to enter this Order and furnish copies to counsel for Defendants and Plaintiff.

## ORDER DENYING DEFENDANTS' MOTION FOR RECONSIDERATION AND TO VACATE ORDER AND GRANTING DEFENDANTS' MOTION TO EXPEDITE

**BEFORE THE COURT** are Defendants' Motion to Reconsider and Motion to Vacate Order Granting Motion to Publish (Ct. Rec.68) and Defendants' Motion for Expedited Hearing (Ct.Rec.72), noted to be heard on December 24, 1998. Having reviewed the record, and being fully advised in the matter, **IT IS HEREBY ORDERED** that Defendants' Motion to Expedite is **GRANTED** and Defendants' Motion to Reconsider and Motion to Vacate Order Granting Motion to Publish (Ct.Rec.68) are **DENIED** for the following reasons.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff's *pro se* Motion to Publish (Ct. Rec.63) was placed in the mail addressed to Defendants on October 30, 1998. Defendants received a copy of Plaintiff's Motion to Publish on November 4, 1998. The Motion was filed in district court on November 9, 1998, and was properly noted for hearing on November 30, 1998. Defendants filed no response. An Order Granting Motion to Publish (Ct.Rec.67) was filed on December 11, 1998.

After receiving a copy of the Court's Order Granting Motion to Publish on December 16, 1998, Defendants filed the instant Motions objecting to the publication on the following day, December 17, 1998. Defendants' objection was thirty-four days late. In Defendants' submissions in support of their Motions, Defendants explain their failure to file a timely response as being caused by counsel of record being on vacation and, upon her return, being immersed in discovery in a class action lawsuit. Defendants also request that, if the court denies their Motion to Reconsider and Motion to Vacate Order Granting Motion to Publish, that the court clarify the record to reflect that Assistant Attorney General Mary E. Fairhurst, currently counsel of record for Defendants, was not substituted as counsel for the Defendants in this matter until after all briefing on the Motions for Summary Judgment had been completed by the parties.

## DISCUSSION

Motions for reconsideration are governed by Fed.R.Civ.P.60. Pursuant to Fed. R.Civ.P. 60(b)(1), the court may relieve a party from an order for mistake, inadvertence, surprise, or excusable neglect. However, in *Engleson v. Burlington Northern R. Co.,* the Ninth Circuit expressly held that "[n]either ignorance nor carelessness on the part of the litigant or his attorney provide grounds for relief under Rule 60(b)(1).11" 972 F.2d 1038, 1043 (9th Cir.1992) (citation and internal quotations omitted). Furthermore, although Rule 60(b)(6) "gives the district court power to vacate judgments whenever such action is appropriate to accomplish jus-

tice," such relief requires a showing of "extraordinary circumstances." *Ackermann v. United States,* 340 U.S. 193, 199–201, 71 S.Ct. 209, 95 L.Ed. 207 (1950). Counsel's busy schedule does not constitute such exceptional circumstances so as to justify the extraordinary relief available pursuant to Rule 60(b)(6), particularly in view of the large number of attorneys employed in the Attorney General's Office. Accordingly,

**IT IS HEREBY ORDERED:**

1. Defendants' Motion for Expedited Hearing (Ct.Rec.72) is **GRANTED.**

2. Defendants' Motion to Reconsider and Motion to Vacate Order Granting Motion to Publish (Ct.Rec.68) are **DENIED.** However, the record shall reflect that Assistant Attorney General Mary E. Fairhurst was not substituted for Assistant Attorney General Penelope S. Nerup as counsel of record for Defendants until May 14, 1998, well after all briefing on the Motions for Summary Judgment had been completed. Both Westlaw and Lexis have been so informed.

**IT IS SO ORDERED.** The Clerk is directed to enter this Order and furnish copies to counsel for Defendants and Plaintiff.