# In the
# United States Court of Appeals
## For the Seventh Circuit

_____

No. 04-1997

KRISTIN A. GREENAWALT,

*Plaintiff-Appellant*,

v.

INDIANA DEPARTMENT OF CORRECTIONS,
  WILLIAM K. KROMANN, and KATHY J. LISBY,

*Defendants-Appellees*.

_____

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. IP 02-0731—**Larry J. McKinney**, *Chief Judge*.

_____

ARGUED JANUARY 11, 2005—DECIDED FEBRUARY 14, 2005

_____


Before POSNER, MANION, and ROVNER, *Circuit Judges*.

POSNER, *Circuit Judge*.  Two years after Kristin Greenawalt was hired by the Indiana Department of Corrections as a research analyst, she was told that to keep her job she would have to submit to a psychological examination. The record, limited as it is to the complaint, is silent on the reason for so belated a demand. But she complied and later brought this suit under 42 U.S.C. § 1983 against the Department and two of its officials (whom she sued in their individual capacity)—her immediate supervisor and the official who had ordered her to take the test. She claimed that

the test, which lasted two hours and inquired into details of her personal life, constituted an unreasonable search in violation of her Fourth Amendment right to be free from unreasonable searches and seizures. Also, invoking the supplemental jurisdiction of the district court, 28 U.S.C. § 1367, she claimed that whether or not the test was a search, requiring her to take it if she wanted to keep her job both invaded her privacy and deliberately inflicted emotional distress on her, and so violated Indiana's common law of torts. She asked for damages plus an injunction that would require the defendants to expunge the results of the test from her personnel file.

The district judge dismissed the suit on the pleadings. He ruled that the Department of Corrections could not be sued under section 1983 because it is not a "person" within the meaning of that statute, *Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989); *Illinois Ass'n of Mortgage Brokers v. Office of Banks & Real Estate*, 308 F.3d 762, 764-65 (7th Cir. 2002), and that the suit against the individual defendants was barred by the doctrine of official immunity because the right that the plaintiff was seeking to enforce had not been clearly established in the case law when she brought the suit. *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001); *Anderson v. Creighton*, 483 U.S. 635, 638-40 (1987); *Campbell v. Peters*, 256 F.3d 695, 699 (7th Cir. 2001). Having thus dismissed the plaintiff's federal claims, the judge relinquished jurisdiction over her state-law claims.

The judge was mistaken about the defendants' immunity concerning the injunctive relief sought, because the defense of official immunity is applicable only to liability for damages. *Flynn v. Sandahl*, 58 F.3d 283, 289 (7th Cir. 1995). But the error is of no consequence because section 1983 does not permit injunctive relief against state officials sued in their individual as distinct from their offi-

cial capacity. *Luder v. Endicott*, 253 F.3d 1020, 1024-25 (7th Cir. 2001). So the suit was properly dismissed against the individual defendants insofar as it sought injunctive relief, as well as against the Department. All that is left is the damages claims against the two individual defendants.

As noted in *Campbell v. Peters*, *supra*, 256 F.3d at 700, we have been told by the Supreme Court that before reaching the issue of immunity we should decide whether the plaintiff has a valid claim. *Saucier v. Katz, supra*, 533 U.S. at 201; *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n. 5 (1998). For otherwise the evolution of the law would be retarded: no case in which only damages were sought could serve as a vehicle for developing the law. So let us consider whether subjecting a public employee to a probing psychological examination is a search. If it is, then it may well have been an unreasonable one in this case, and thus violate the Fourth Amendment, because Greenawalt is merely a researcher. She has no contact with prisoners, is not armed or privy to state secrets, and has no other powers or opportunities, so far as we can tell, that would warrant imposing such a condition of employment, unlike cases such as *Flynn v. Sandahl*, *supra*, 58 F.3d at 289-90 (correctional officer), and *Daury v. Smith*, 842 F.2d 9, 14 (1st Cir. 1988) (school administrator); cf. *National Treasury Employees Union v. Von Raab*, 489 U.S. 656, 672 (1989) (urinalysis of border-patrol officers); *Carroll v. City of Westminster*, 233 F.3d 208, 210-11 (4th Cir. 2000) (urinalysis of police officer); *Stigile v. Clinton*, 110 F.3d 801, 803 (D.C. Cir. 1997) (urinalysis of persons with access to building adjacent to White House). But we need not decide this, as we do not think a psychological test is a search.

Almost any quest for information that involves a physical touching, which a test does not, is nowadays deemed a

"search" within the meaning of the Fourth Amendment, which the Fourteenth Amendment has been interpreted as making fully applicable to state action. Drawing a tiny amount of blood from an unconscious person to determine the level of alcohol in his blood is a search, *Breithaupt v. Abram*, 352 U.S. 432, 439-40 (1957); cf. *Schmerber v. California*, 384 U.S. 757, 766-67 (1966), and so even is administering a breathalyzer test, *Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 617 (1989), where physical contact is at its minimum—the subject's lips merely touch the breathalyzer. And so finally is a urine test, *Board of Education v. Earls*, 536 U.S. 822, 828 (2002), in which the subject is required merely to provide a urine sample, so that the test instrument does not touch the subject's body at all. The invasion of privacy caused by submitting to the kind of psychological test given to the plaintiff in this case may well have been more profound than the invasion caused by a blood test, a breathalyzer test, or a urine test, though we cannot say for sure; the test is not in the record—all we know is that, according to the complaint, "the battery of psychological tests examined Ms. Greenawalt's personality traits, psychological adjustments and health-related issues." It is true that she consented to take the test, but had she not done so she would have lost her job, which, if she had a constitutional right not to take the test, would place a heavy burden on the exercise of her constitutional rights.

Many cases say that the Fourth Amendment is intended to protect privacy. E.g., *id.* at 830-32; *Kyllo v. United States*, 533 U.S. 27, 32-33 (2001); *Skinner v. Railway Labor Executives' Ass'n*, *supra*, 489 U.S. at 617; *Arizona v. Hicks*, 480 U.S. 321, 324-25 (1987); *Platteville Area Apartment Ass'n v. City of Platteville*, 179 F.3d 574, 579 (7th Cir. 1999); *Palmieri v. Lynch*, 392 F.3d 73, 81 (2d Cir. 2004). Although this is historically inaccurate, *Boyd v. United States*, 116 U.S. 616, 624-30 (1886);

Orin S. Kerr, "The Fourth Amendment and New Technologies: Constitutional Myths and the Case for Caution," 102 *Mich. L. Rev.* 801 (2004); Raymond Shih Ray Ku, "The Founders' Privacy: The Fourth Amendment and the Power of Technological Surveillance," 86 *Minn. L. Rev.* 1325, 1333-38 (2002), it is not uncommon for constitutional provisions to be supplied with rationales that the framers and ratifiers of the provisions would not have recognized. Nor is the term "a searching inquiry" an oxymoron; wiretapping is deemed a search even when there is no trespass (the tap will usually be on a section of the phone line that is outside the premises on which the phone being tapped resides), though all that is taken is thoughts, often concerning private matters, expressed in conversation. *Berger v. New York*, 388 U.S. 41, 50-51 (1967); *Katz v. United States*, 389 U.S. 347, 353 (1967); *Platteville Area Apartment Ass'n v. City of Platteville, supra*, 179 F.3d at 579. Cases involving the rifling of an employee's desk, such as *O'Connor v. Ortega*, 480 U.S. 709, 725-26 (1987), are similar in this regard: the employee has no property or possessory interest in his desk, yet the invasion of his interest in privacy makes the rifling a search.

Nevertheless we do not think that the Fourth Amendment should be interpreted to reach the putting of questions to a person, even when the questions are skillfully designed to elicit what most people would regard as highly personal private information. The cases we have cited show, it is true, that a Fourth Amendment claim does not depend on the claimant's being able to establish an invasion of such interests that tort law traditionally protects as the interest in bodily integrity (protected by the tort of battery), in freedom of movement (protected by the tort of false imprisonment), and in property (protected by the torts of trespass and of conversion). But that is all they show, so far as bears on the issue in this case. The implications of extending the doctrine

of those cases to one involving mere questioning would be strange. In a case involving sex or some other private matter, a government trial lawyer might be required to obtain a search warrant before being allowed to conduct a cross-examination—or the judge before being allowed to ask a question of the witness. Police might have to obtain search warrants or waivers before conducting routine inquiries, even of the complaining witness in a rape case, since they would be inquiring about the witness's sexual behavior. Questioning in a police inquiry or a background investigation or even a credit check would be in peril of being deemed a search of the person about whom the questions were asked. Psychological tests, widely used in a variety of sensitive employments, would be deemed forbidden by the Constitution if a judge thought them "unreasonable."

It was practical considerations such as these that moved us in *United States v. Childs*, 277 F.3d 947, 950 (7th Cir. 2002) (en banc), to hold that asking a question of a person already in custody is not a "seizure" of the person within the meaning of the Fourth Amendment. "By asking one question about marijuana, officer Chiola did not make the custody of Childs an 'unreasonable' seizure. What happened here must occur thousands of times daily across the nation: Officers ask persons stopped for traffic offenses whether they are committing any other crimes. That is not an unreasonable law-enforcement strategy, either in a given case or in gross; persons who do not like the question can decline to answer." *Id.* at 954. Of course, Greenawalt's situation is different. Theoretically, a person subject to routine police questions can simply decline to answer without suffering any adverse consequences. Had Greenawalt refused to agree to the psychological examination, she would have lost her job.

Even though administering a lie-detector test involves placing sensors on the skin of the person being interrogated,

the Supreme Court has suggested that because the objective is to obtain testimonial rather than physical evidence, the relevant constitutional amendment is not the Fourth but the Fifth. "The Court in *Schmerber* pointed to the lie detector test as an example of evidence that is difficult to characterize as testimonial or real. Even though the test may seek to obtain physical evidence, we reasoned that to compel a person to submit to such testing 'is to evoke the spirit and history of the Fifth Amendment.' " *South Dakota v. Neville,* 459 U.S. 553, 561 n. 12 (1993), quoting *Schmerber v. California, supra,* 384 U.S. at 764. The observation is even more apropos with respect to interrogations that do not involve a physical touching. Cf. *United States v. Childs, supra,* 277 F.3d at 951. The Fourth Amendment was not drafted, and has not been interpreted, with interrogations in mind. We are not surprised to have found no appellate case that supports the plaintiff's position—which by the way shows that the district judge was absolutely correct in ruling that the individual defendants had a good defense of immunity.

Our conclusion that the plaintiff has not stated a Fourth Amendment claim does not leave people in her position remediless—or indeed leave her remediless. States are free to protect privacy more comprehensively than the Fourth Amendment commands; and Greenawalt is free to continue to press her state-law claims in state court, where they belong. In most states if prison officials were to publicize highly personal information obtained from someone in Greenawalt's position by the kind of test of which she complains, she would have a state-law claim for invasion of her tort right of privacy. Indiana, it is true, has thus far refused to recognize this branch of the tort law of privacy. *Felsher v. University of Evansville,* 755 N.E.2d 589, 593 (Ind. 2001). But the Fourth Amendment does not expand accordion-like to fill what may be a gap in the

privacy law of a particular state. And there are other strings to the plaintiff's state-law bow; it is possible, though perhaps unlikely in light of *Cullison v. Medley*, 570 N.E.2d 27, 31 (Ind. 1991), that Indiana recognizes "intrusion into a person's emotional solace" as an actionable invasion of privacy. *Branham v. Celadon Trucking Services, Inc.*, 744 N.E.2d 514, 524 (Ind. App. 2001); cf. *Pulla v. Amoco Oil Co.*, 72 F.3d 648, 652-53 (8th Cir. 1995). Greenawalt may also be able to obtain mileage from cases, none however in Indiana, that hold that requiring a public employee to take a lie-detector test without good cause is an invasion of privacy. *Texas State Employees Union v. Texas Dept. of Mental Health & Mental Retardation*, 746 S.W.2d 203, 206 (Tex. 1987); *Long Beach City Employees Ass'n v. City of Long Beach*, 719 P.2d 660, 666 (Cal. 1986). She may also be able to prove intentional infliction of emotional distress.

Perhaps it could even be argued that the administration by public officers of a particularly intrusive, and gratu-itously humiliating, psychological test is a deprivation, without due process of law, of an interest in privacy that is an aspect of the liberty protected by the due process clauses of the Fifth and Fourteenth Amendments. There is a hint in *Whalen v. Roe*, 429 U.S. 589, 600 (1977), that the "interest in nondisclosure of private information" might indeed constitute a part of that liberty. And *Whalen* does not stand completely alone. See *Nixon v. Administrator of General Services*, 433 U.S. 425, 457-62 (1977); *Denius v. Dunlap*, 209 F.3d 944, 955-58 (7th Cir. 2000); *Sterling v. Borough of Minersville*, 232 F.3d 190, 196-97 (3d Cir. 2000); but cf. *Willan v. Columbia County*, 280 F.3d 1160, 1163-64 (7th Cir. 2002); *Borucki v. Ryan*, 827 F.2d 836, 848-49 (1st Cir. 1987). We need not wrestle the issue to the ground. There is no due process claim in this case. It is enough to decide this case that the Fourth Amendment does not provide a remedy for the

unpleasantness of being subjected to a psychological test, and that if we are wrong still there is no doubt that the existence of such a remedy was not clearly established when this suit was filed.

AFFIRMED.

A true Copy:

Teste:

_____

*Clerk of the United States Court of Appeals for the Seventh Circuit*