**Karen HILL and David Hill, Plaintiffs,**

v.

**WASHINGTON STATE DEPARTMENT OF CORRECTIONS; et al., Defendants.**

**Case No. C08–5202BHS.**

United States District Court, W.D. Washington, at Tacoma.

March 31, 2009.

David Hill, Aberdeen, WA, pro se.

Karen Hill, Eatonville, WA, pro se.

Jason M. Howell, Attorney General's Office, Olympia, WA, for Defendants.

ORDER ADOPTING REPORT AND RECOMMENDATION IN PART AND RESERVING RULING ON PLAINTIFFS' CLAIM FOR INJUNCTIVE RELIEF

BENJAMIN H. SETTLE, District Judge.

This matter comes before the Court on the Report and Recommendation of the Honorable Karen L. Strombom, United States Magistrate Judge (Dkt. 43), Plaintiffs' Objections to the Report and Recommendation (Dkt. 44) and the remainder of the record. The Court hereby adopts the Report and Recommendation in part as stated herein, and requests additional briefing.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs challenge the Washington State Department of Corrections ("DOC") policy which permits eligible inmates extended family visitation. The governing policy in place at the time of Plaintiffs' complaint was DOC Policy 590.100, Revision Date July 11, 2007. Dkt. 1–2, 41–55 (DOC Policy 590.100, Revision Date 7/11/07) (hereafter "pre-revision DOC Policy"). This policy was revised after Judge Strombom filed a Report and Recommendation. *See* DOC Policy Number 590.100, Revision Date 2/27/09, *available at* http://www.doc.wa.gov/Policies/showFile.aspx?name=590100 (hereafter "current DOC Policy").

### A. EXTENDED FAMILY VISITS PRIOR TO FEBRUARY 27, 2009

Under the pre-revision DOC Policy, a prisoner could qualify for an Extended Family Visit ("EFV") under certain conditions. The history of DOC 590.100 is explained as follows:

In February 13, 1995, [DOC] 590.100 was revised. The impetus for the new and more stringent revised directive was a serious incident at another correctional facility during an extended family visit. The incident occurred at the Clallam Bay Corrections Center during a family visit on January 7, 1995. The inmate involved held his spouse at knife point during an extended family visit, attacked and stabbed her, and held her hostage. The inmate was shot during the incident.

As a result of the Clallam Bay incident, members of the Washington Legislature during the 1995 session introduced a measure that would have completely precluded extended family visitation in Washington prisons. However, instead of passing such a law, the Washington Legislature passed, and the Governor signed, House Bill 2010, containing a provision that required the Department of Corrections to develop a uniform policy governing "the privilege of extended family visitation." *See* RCW 72.09.490.

As a result of House Bill 2010, the Division of Prisons revised the directive governing extended family visits, [DOC] 590.100. The revised directive became effective February 13, 1995. As revised, [DOC] Directive 5 90. 100 provides that extended family visits for eligible offenders and their immediate families must be approved by the Superintendent, who has the authority to approve, deny, suspend, or terminate visits. [DOC] 590.100 ("If it is determined there is a reason to believe that an offender, although he/she meets all other eligibility requirements, is a danger to him/herself, the visitor(s), or to the orderly operation of the program, the Superintendent may exclude the offender from the program.").

The directive further eliminates "maximum, close custody, and death row offenders" from participating in the program, and restricts extended family visits in a number of other categories. The directive includes a restriction that "[o]ffenders may be excluded from participation if they have a documented history of domestic violence against any person." Additionally, the directive provides that only those spouses who were legally married to the offenders prior to incarceration for the current crime of conviction are eligible for extended family visitation. *Id.*

On February 24, 1995, Tom Rolfs, Director of the Division of Prisons, issued and circulated the new EFV directive as well as a policy statement governing the implementation of the new EFV directive. In the policy statement, Rolfs expressly recognized the extensiveness of the directive's significant revisions and encouraged the superintendents to take the necessary steps to ensure that the revised directive be implemented "with the sensitivity and necessity of its contents in mind." The policy statement provided two guidelines for implementing the newly revised directive.

The first guideline requires the Prison Superintendents to review each inmate currently approved for participation in the EFV program pursuant to the pre-revision directive to determine if he/she meets the new criteria. It also allows the Superintendent to disapprove any inmate currently participating who failed to meet the revised directive's provisions.

The second guideline allows the Superintendents to make one-time exceptions for inmates who do not meet the revised directive's requirements. Specifically, this "grandfathering" provision provides the Superintendents with the discretion to approve inmates who had (1) either already been participating in the program, or had made application to the program prior to January 10, 1995, and (2) were determined not to present safety or security concerns for the program or participants. The "grandfathering" clause does not grant the superintendents discretion to consider any other inmate for participation in the program.

*Daniel v. Rolfs,* 29 F.Supp.2d 1184, 1185–86 (E.D.Wash.1998). When the *Daniel* court addressed the constitutionality of this policy, the criteria of the grandfathering provision were that the inmate *either* had made application to the program or had already been participating in the program before January 10, 1995.

The pre-revision DOC Policy, which was in effect at the time of Plaintiff's complaint, contained the following "grandfathering provision":

Offenders who made application *and* were participating in the EFV Program prior to January 10, 1995, may be allowed to continue participation based on the Superintendent's review. Offenders

who were grandfathered into the program and lose custody, must reapply and meet current application criteria. This also applies to parole revocations, CCI violators and re-incarcerated offenders. Grandfathering is not allowed for remarriages following a divorce unless authorized by the Prisons Deputy Secretary.

Pre-revision DOC Policy 590.100, Directive § V(E)(1) (emphasis added). The pre-revision provision specifically precluded extended visitation privileges to spouses who married inmates post-conviction. *Id.,* § V(C)(1).

## B. CURRENT DOC POLICY

On February 27, 2009, DOC issued the current DOC Policy. The current DOC Policy made several changes to the pre-revision DOC Policy. In particular, the current DOC policy permits an eligible inmate, *see* DOC Policy 590.100 § (V)(A), extended family visitation with a spouse whom the inmate married after formal judgment and sentence if certain conditions are met, *see id.* § (V)(C)(2) and (3).

In addition, the current DOC Policy grandfathering provision provides:

> Offenders who made application or were participating in the EFV Program prior to January 10, 1995, may be allowed to continue participation based on Superintendent review. Offenders who were grandfathered into the program and demoted in custody must reapply and meet current application criteria.

*Id.,* § (V)(G)(1).

## C. PLAINTIFFS' REQUEST FOR EFV

Plaintiffs are a married couple, Karen Hill a free person, and David Hill an inmate incarcerated in the Washington Department of Corrections ("DOC"). Plaintiffs were married on June 20, 2005, which was 40 days after Mr. Hill's conviction. Dkt. 1–2 at 29 (Plaintiffs' complaint).

Plaintiffs were denied participation in the EFV program because they were married after Mr. Hill was convicted.

## D. THE CURRENT PROCEEDINGS

On February 22, 2008, Plaintiffs filed a civil rights complaint in the Superior Court of the State of Washington in and for the County of Thurston. Dkt. 1–2, 28–35. Plaintiffs claim that Defendants' denial of their EFV application is a violation of their right to equal protection of the law under the Fourteenth Amendment. *Id.* at 12–13. On April 2, 2008, Defendants removed the action to this Court. Dkt. 1. Plaintiffs seek damages as well as injunctive relief.

On April 9, 2008, Defendants filed a Motion to Dismiss, arguing that Plaintiffs have no constitutional right to participate in the EFV program under DOC Policy 590.100. Dkt. 5. This motion was later renoted as a motion for summary judgment. Defendants maintain that Plaintiffs fail to state an equal protection violation. *Id.* Defendants further maintain that (1) Plaintiffs fail to allege personal participation on the part of Defendants, (2) Plaintiffs' claims against the DOC are barred by the Eleventh Amendment, and (3) even if a constitutional violation occurred, the individual Defendants are entitled to qualified immunity.

On January 30, 2009, Judge Strombom issued a Report and Recommendation. Dkt. 43. Judge Strombom recommended that the Court grant Defendants' motion because (1) the "grandfathering provision" did not violate Plaintiffs' right to equal protection, (2) Plaintiffs were not eligible for the "grandfathering provision," and (3) Defendants Vail and Pacholke were entitled to summary judgment for lack of personal participation. Judge Strombom did not reach the issue of qualified immunity with regard to Defendant Roberts, who was involved in the denial of Mr. Hill's

application, because she concluded that Plaintiffs failed to allege a constitutional violation. Judge Strombom did conclude that Plaintiffs' suit against DOC was barred under the Eleventh Amendment.

On February 13, 2009, Plaintiffs filed objections to the Report and Recommendation. Dkt. 44. Plaintiffs specifically object to Judge Strombom's recommendation that Defendants did not violated Plaintiffs' rights to equal protection and argue that Defendants have not put forth a legitimate penological interest for either DOC Policy 590.100 or the "grandfathering provision" of the policy. Plaintiffs also maintain that changes in DOC Policy 590.100, recently revised on February 27, 2009, support their argument that the policy Plaintiffs initially challenged was arbitrary.

Plaintiffs raise three additional objections. First, Plaintiffs maintain that Defendants Vail and Pacholke should be held liable because they are public servants and failed to amend the DOC Policy. Second, Plaintiffs contend that no individual Defendant is entitled to qualified immunity because a reasonable person would know that enforcing the DOC Policy violates a clearly established constitutional right. Third, Plaintiffs maintain that DOC is a proper defendant.

On February 27, 2009, Defendants responded. Dkt. 45. On March 10, 2009, Plaintiffs filed a reply, requesting that the Court reject the Report and Recommendation because Defendants fail to explain why Plaintiffs are treated differently than inmates who applied or participated in the EFV program prior to the cut-off date. Dkt. 46.

## II. DISCUSSION

### A. STANDARD

The district court "shall make a de novo determination of those portions of the report ... to which objection is made," and "may accept, reject, modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). The district court "may also receive further evidence" on the issues presented. *Id.*

### B. INDIVIDUAL DEFENDANTS

The Court adopts Judge Strombom's finding that Defendants Vail and Pacholke are entitled to summary judgment for lack of personal participation regarding Plaintiffs' challenge to the pre-revision DOC Policy. Plaintiffs' argument that Defendants Vail and Pacholke should be held liable because they are public servants and failed to amend the pre-revision DOC Policy is unavailing. Judge Strombom properly addressed this argument in the Report and Recommendation. In addition, even if Defendants had alleged personal participation, Defendants Vail and Pacholke are entitled to qualified immunity as discussed below.

Judge Strombom did not reach the issue of qualified immunity because she found that Plaintiffs failed to allege a constitutional violation. Thus, addressing qualified immunity was not necessary. This Court will address qualified immunity because Plaintiffs challenged this issue in their objections.

Prior to the Supreme Court's decision in *Pearson v. Callahan*, 555 U.S. ——, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009), courts were required to first determine whether the plaintiff had alleged facts that demonstrated the violation of a constitutional right, prior to addressing the issue of qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). Under *Saucier*, if the court found a violation of a constitutional right, "the next, sequential step [was] to ask whether the right was clearly established ... in light of the specific context of the case." *Id.* This sequence, however, is no longer

the mandatory procedure that a district court must utilize when considering the shield of qualified immunity. *See Pearson*, 129 S.Ct. at 818. Rather, the district court may "determine the order of decisionmaking that will best facilitate the fair and efficient disposition of each case." *Id.* at 821. Because Plaintiffs here have not demonstrated that Defendants violated any clearly established constitutional right, the Court may resolve Plaintiffs' claims without addressing the issue of whether a constitutional violation was properly alleged.

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The immunity is "immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985).

In light of pre-existing law, the unlawfulness of a state actor's conduct must be apparent in order for that conduct to constitute a violation of "clearly established law." *See Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). The plaintiff bears the burden of proving the "fact-specific" right was clearly established at the time of the alleged violation so that a reasonable official would have understood that his or her conduct violated that right. *Id.* at 638, 107 S.Ct. 3034.

The Court concludes that Defendants Vail, Pacholke, and Roberts are entitled to qualified immunity with regard to all of Plaintiffs' claims for damages, fees, and costs for Defendants' enforcement of both the pre-revised DOC Policy and the current DOC Policy. Although Plaintiffs argue that a reasonable person would know that enforcing the DOC Policy violates a clearly established constitutional right, they fail to show that the DOC Policy, in light of pre-existing law, violates any right guaranteed by the Constitution. In other words, even if Plaintiffs had alleged a violation of a constitutional right, the DOC Policy did not violate any clearly established constitutional right.[1]

## C. ELEVENTH AMENDMENT IMMUNITY

The Court also adopts Judge Strombom's finding that the Eleventh Amendment bars Plaintiffs' suit against the DOC. Dkt. 42, 12–13. Judge Strombom properly rejected Defendants' argument that *In re Lazar*, 237 F.3d 967 (9th Cir.2001), supports their assertion that the DOC waived immunity by removing Plaintiffs' action to federal court. *Id.* at 13.

The Court notes that Plaintiffs also sought injunctive relief. Dkt. 1–2 at 34. Under the doctrine of *Ex Parte Young*, 209 U.S. 123, 155–56, 28 S.Ct. 441, 52 L.Ed. 714 (1908), prospective relief against a state official in his or her official capacity to prevent future federal constitutional or federal statutory violations is not barred by the Eleventh Amendment. This doctrine appears to apply to this case. Judge Strombom implicitly (and properly) dismissed Plaintiffs' claim for injunctive relief because she found that the pre-revised DOC Policy did not violate Plaintiffs' constitutional rights.

As discussed above, the DOC revised the challenged policy after Judge Strombom issued the Report and Recommendation. Therefore, the Court should not determine whether Plaintiffs have pled a

---

1. In any event, this Court previously found that the pre-revision DOC Policy did not violate any constitutional right. *Lowden v. Miller–Stout*, C08–5365BHS, Dkt. 63.

cognizable claim for injunctive relief based on the current DOC Policy until Plaintiffs have had an opportunity to address this issue.

The only proper defendant to this claim is Defendant Vail in his capacity as Secretary of the DOC. *See, e.g., Alabama v. Pugh,* 438 U.S. 781, 782, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978) (claim for prospective relief against a state agency barred by Eleventh Amendment); and *Greenawalt v. Ind. Dep't of Corr.,* 397 F.3d 587, 589 (7th Cir.2005) (to allege claim for injunctive relief against state agency, a plaintiff must name the state official responsible for enforcing the contested policy in his or her official capacity).

## D. CONCLUSION

The Court overrules Plaintiffs' objections to Judge Strombom's Report and Recommendation with regard to all of Plaintiffs' claims challenging the pre-revised DOC Policy.

However, in light of the revision of the challenged DOC Policy, Plaintiffs may file additional briefing on the issue of whether they are entitled to injunctive relief from the current DOC Policy 590.100. Plaintiffs may file briefing no later than May 1, 2009. Defendants may respond to Plaintiffs briefing on or before May 8, 2009. If Plaintiffs fail to file, the Court will address Defendants' Motion for Summary Judgment based on the current status of the record.

The only remaining · defendant in this case is Defendant Vail.

## III. ORDER

Therefore, it is hereby

**ORDERED** that Plaintiffs' Objections (Dkt. 44) are **OVERRULED** and the Report and Recommendation (Dkt. 43) is **ADOPTED in part,** as follows:

1. Plaintiffs' claims for damages based on the pre-revision DOC Policy or current DOC Policy are **DISMISSED;**

2. Plaintiffs may file additional briefing on the question of whether they are entitled to injunctive relief under the current DOC Policy as stated herein. The Court reserves ruling as to Plaintiffs' claims for injunctive relief.

3. The Report and Recommendation is **RENOTED** for May 8, 2009.

## REPORT AND RECOMMENDATION

KAREN L. STROMBOM, United States Magistrate Judge.

Before the Court is Defendants' motion for summary judgment. Dkt. # 5. Defendants originally filed this.motion as a motion to dismiss arguing, *inter alia,* that Plaintiffs have no constitutional right to participate in the DOC's extended family visitation (EFV) program. *Id.* The undersigned submitted a Report and Recommendation (Dkt. # 17), recommending that Defendants' motion to dismiss be granted. Plaintiffs objected, submitting documentary evidence in support. Dkts. # 14, 15. In accordance with Fed.R.Civ.P. 12(d), Defendants' motion to dismiss was converted to a motion for summary judgment and.re-referred to the undersigned. Dkt. # 18.

The motion was renoted and the parties were given additional time to file briefs on the issues presented on summary judgment. Dkt. # 28. Defendants filed their reply (Dkt. # 20), Plaintiffs filed an affidavit (Dkt. # 24), surreply (Dkt. # 25), and opposition with cross motion (Dkt. # 40), and Defendants filed a reply to Plaintiffs' cross motion (Dkt. # 41). The Court has considered all responses, replies, affidavits and exhibits filed by the parties, including those submitted prior to conversion of the motion to dismiss to one for summary judgment.

## I. SUMMARY OF CASE

Pursuant to revised DOC Policy 590.100, David and Karen Hill were denied participation in the EFV Program because they were married after David Hill was convicted. Defendants move to dismiss all of Plaintiffs' claims, arguing that they do not have a constitutional right to EFVs and DOC Policy 590.100 is supported by a legitimate penological interest. The Hills do not dispute that they were married forty days after Mr. Hill was convicted. However, they allege that denial of their EFV application under DOC Policy 590.100 based on the date of their marriage violates their right to equal protection. In support, the Hills argue that at least four other offenders have been given special exceptions to the pre-conviction marriage eligibility requirement of the EFV policy.

Defendants also argue that Plaintiffs have failed to allege Defendants' personal participation, that the Eleventh Amendment shields the named Defendants in their official capacities, and that the Defendants are entitled to qualified immunity.

Having reviewed the parties' papers, supporting documents, and balance of the record, the Court finds that Defendants' motion should be granted on the ground that Plaintiffs have failed to show a violation of a constitutional right.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. Application for Participation in EFV

The Hills were married on June 20, 2005 in the Snohomish County Jail, forty days after Mr. Hill's conviction. Dkt. # 1–2, pp. 35, 44.[1] After Plaintiff David Hill was committed to the DOC, Plaintiff Karen Hill submitted an application for participation in the Extended Family Visitation program (EFV). Their application was denied on May 8, 2007, pursuant to DOC Policy 590.100 because they were married after his conviction. *Id.*, pp. 37–38; p. 59 (EFV Action form dated May 8, 2007).[2]

### B. DOC 590.100 Extended Family Visitation

DOC 590.100 was preceded by DOC Directive 590.100. On February 13, 1995, the directive was revised. The following summary regarding that revision is informative:

In February 13, 1995, DOP 590.100 was revised. The impetus for the new and more stringent revised directive was a serious incident at another correctional facility during an extended family visit. The incident occurred at the Clallam Bay Corrections Center during a family visit on January 7, 1995. The inmate involved held his spouse at knife point during an extended family visit, attacked and stabbed her, and held her hostage. The inmate was shot during the incident. As a result of the Clallam Bay incident, members of the Washington Legislature during the 1995 session introduced a measure that would have completely precluded extended family visitation in Washington prisons. However, instead of passing such a law, the Washington Legislature passed, and the Governor signed, House Bill 2010, containing a provision that required the Department

---

1. CM/ECF page numbering.

2. *See e.g.,* Dkt. # 8, pp. 14–29, copy of DOC 590.100, for full text. DOC Policy 590.100 became effective March 15, 2001, superseding DOP 590.100. The policy was revised on June 8, 2006 and again on July 11, 2007.

According to the Summary of Revision/Review dated June 8, 2007, changes made to the policy effective July 11, 2007 did not include changes to ¶ V.C.1's requirement that spouses must have been legally married to the offender prior to conviction and any concurrently or consecutively served conviction. *Id.,* p. 14.

of Corrections to develop a uniform policy governing "the privilege of extended family visitation." *See* RCW 72.09.490. As a result of House Bill 2010, the Division of Prisons revised the directive governing extended family visits, DOP 590.100. The revised directive became effective February 13, 1995. As revised, DOP Directive 590.100 provides that extended family visits for eligible offenders and their immediate families must be approved by the Superintendent, who has the authority to approve, deny, suspend, or terminate visits.

*Daniel v. Rolfs,* 29 F.Supp.2d 1184, 1186 (E.D.Wash.1999).

Thus, DOC Policy 590.100 provides that extended family visits for eligible offenders and their immediate families must be approved by the Superintendent, who has the authority to approve, deny, suspend, or terminate visits. *Daniel,* 29 F.Supp.2d at 1186 (*citing* Policy 590.100). The directive provides that only those spouses who were legally married to the offenders prior to conviction for the current crime of conviction are eligible for extended family visitation. *Id.*

### III. STANDARD OF REVIEW

Summary judgment shall be rendered if the pleadings, exhibits, and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Federal Rule of Civil Procedure ("Fed. R. Civ.P.") 56(c). In deciding whether summary judgment should be granted, the court must view the record in the light most favorable to the nonmoving party and indulge all inferences favorable to that party. Fed.R.Civ.P. 56(c) and (e). When a summary judgment motion is supported as provided in Fed.R.Civ.P. 56, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in Fed.R.Civ.P. 56, must set forth specific facts showing there is a genuine issue for trial. Fed.R.Civ.P. 56(e). If the nonmoving party does not so respond, summary judgment, if appropriate, shall be rendered against that party. *Id.*

The moving party must demonstrate the absence of a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 257, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Mere disagreement or the bald assertion that a genuine issue of material fact exists does not preclude summary judgment. *California Architectural Building Products, Inc. v. Franciscan Ceramics, Inc.,* 818 F.2d 1466, 1468 (9th Cir. 1987). A "material" fact is one which is "relevant to an element of a claim or defense and whose existence might affect the outcome of the suit," and the materiality of which is "determined by the substantive law governing the claim." *T.W. Electrical Serv., Inc. v. Pacific Electrical Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987).

Mere "[d]isputes over irrelevant or unnecessary facts," therefore, "will not preclude a grant of summary judgment." *Id.* Rather, the nonmoving party "must produce at least some 'significant probative evidence tending to support the complaint.'" *Id.* (quoting *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505); see also *California Architectural Building Products, Inc.,* 818 F.2d at 1468 ("No longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment."). In other words, the purpose of summary judgment "is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." *Lujan v. National Wildlife Federation,* 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990).

### IV. DISCUSSION

#### A. Plaintiffs' Section 1983 Claim

The Hills filed this claim under 42 U.S.C. § 1983. To sustain a claim under

Section 1983, a plaintiff must show that a defendant acted under color of state law to deprive the plaintiff of a right or privilege specifically enumerated under the United States Constitution or the laws of the United States. 42 U.S.C. § 1983; *Parratt v. Taylor,* 451 U.S. 527, 532, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), overruled in part on other grounds; *Daniels v. Williams,* 474 U.S. 327, 330–31, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). Prisoners, as all individuals, are afforded the protections of the Civil Rights Act. *Toussaint v. McCarthy,* 801 F.2d 1080 (9th Cir.1986). However, "[t]he duty to protect inmates' constitutional rights ... does not confer the power to manage prisons, for which courts are ill-equipped, or the capacity to second-guess prison administrators." *Id.* at 1086.

The Hills allege that Defendants have deprived them of their right to equal protection. *See, e.g.,* Dkt. # 25, p. 5. In particular, Karen Hill argues that she has a constitutionally protected right to enjoy the same exceptions given to other prisoner wives to the EFV program. *Id.,* p. 4.

 The Fourteenth Amendment right to equal protection survives incarceration. *See, e.g., Baumann v. Arizona Dep't of Corrections,* 754 F.2d 841 (9th Cir.1985). Where a plaintiff does not allege a violation of a fundamental right or the existence of a suspect classification, prison officials need only show that their policies bear a rational relation to a legitimate penological interest in order to satisfy the equal protection clause. *See Turner v. Safley,* 482 U.S. 78, 89–90, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987); *Coakley v. Murphy,* 884 F.2d 1218, 1221–22 (9th Cir. 1989); *Daniel v. Rolfs,* 29 F.Supp.2d 1184 (E.D.Wash.1998).

 The proper inquiry here is whether the limitation on participation in the EFV program to only those spouses who were legally married to the offenders prior to

conviction reasonably furthers a legitimate penological interest. *See Daniel, supra.* To prevail on an equal protection claim, Plaintiffs must show (1) that they have a fundamental personal right or (2) that they were intentionally discriminated against as a member of a suspect impermissible classification or (3) that the prison regulation was not reasonably related to a valid penological interest. *Lockary v. Kayfetz,* 917 F.2d 1150, 1155 (9th Cir.1990); *see Turner v. Safley,* 482 U.S. 78, 89–91, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987).

**(1) Fundamental Right**

 There is no fundamental personal right implicated in this case as inmates have no constitutionally protected right to conjugal visits. *Toussaint v. McCarthy,* 801 F.2d 1080, 1113–14 (9th Cir.1986), *cert. denied,* 481 U.S. 1069, 107 S.Ct. 2462, 95 L.Ed.2d 871 (1987) (prisoners have no right to contact visits). That there is a rational connection between a ban on contact visits and internal security of a detention facility is too obvious to warrant discussion. *Block v. Rutherford,* 468 U.S. 576, 586, 104 S.Ct. 3227, 82 L.Ed.2d 438 (1984).

 Neither prisoners nor visitors have a constitutional right to prison visitation. *Harris v. Murray,* 761 F.Supp. 409, 412 (E.D.Va.1990). "The denial of prison access to a particular visitor 'is well within the terms of confinement ordinarily contemplated by a prison sentence.' ... Nor is access to a particular visitor independently protected by the Due Process Clause." *Navin v. Iowa Dep't of Corrections,* 843 F.Supp. 500, 504 (N.D.Iowa 1994) (quoting *Hewitt v. Helms,* 459 U.S. 460, 468, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983)), and (citing *Kentucky Dep't of Corrections v. Thompson,* 490 U.S. 454, 461, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989)).

**(2) Discrimination—Protected Class**

■ In order to state an equal protection claim under 42 U.S.C. § 1983, Plaintiffs have to show that Defendants acted with intent to discriminate. *Sischo–Nownejad v. Merced Community College Dist.*, 934 F.2d 1104, 1112 (9th Cir.1991). The discrimination must be "intentional or purposeful." *Grader v. Lynnwood*, 53 Wash. App. 431, 437, 767 P.2d 952 (1989), *review denied*, 113 Wash.2d 1001, 777 P.2d 1050, *cert. denied*, 493 U.S. 894, 110 S.Ct. 243, 107 L.Ed.2d 193, *Draper v. Rhay*, 315 F.2d 193, 198 (9th Cir.1963). "This 'discriminatory purpose' must be clearly shown since such a purpose cannot be presumed." *Grader*, 53 Wash.App. at 437.

■ Additionally, Plaintiffs must show that they were "treated differently . . . because [they] belonged to a protected class." *Seltzer–Bey v. Delo*, 66 F.3d 961, 963 (8th Cir.1995) (citing *Divers v. Department of Corrections*, 921 F.2d 191, 193 (8th Cir.1990)). "Indeed, showing that different persons are treated differently is not enough without more, to show a denial of equal protection." *Griffin v. County School Board of Prince Edward Co.*, 377 U.S. 218, 230, 84 S.Ct. 1226, 12 L.Ed.2d 256 (1964).

■ Karen Hill insists that theirs is not an ordinary "Extended Family Visit" case, but is a case of first impression because the *Daniel* court never addressed the equal protection rights of a spouse who was denied EFVs. Dkt. # 25, p. 7. Mrs. Hill argues that, as a prisoner's spouse, she has an absolute right to treatment equal to other prisoners' wives with whom she is similarly situated. *Id.*

■ Whether the claim is pressed by the inmate, his spouse, or the two together, the Court's analysis remains the same. Neither Mr. nor Mrs. Hill have alleged that they are members of a suspect class. Thus, there is no legal basis for Mrs. Hill's claim that she is absolutely entitled to equal treatment. Prisoners are not a suspect class. *Webber v. Crabtree*, 158 F.3d 460, 461 (9th Cir.1998). Nor do the spouses of prisoners have rights to visitation distinct from those of their inmate spouse. *See e.g.*, *Harris v. Murray*, 761 F.Supp. 409, 412 (E.D.Va.1990) (neither prisoners nor visitors have a constitutional right to prison visitation); *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975) ("a [prisoner] has no constitutional right to physical contact with his family."); *Block v. Rutherford*, 468 U.S. 576, 586, 104 S.Ct. 3227, 82 L.Ed.2d 438 (1984) ("That there is a rational connection between a ban on contact visits and internal security of a detention facility is too obvious to warrant discussion.") In *Robinson v. Palmer*, 841 F.2d 1151 (D.C.Cir.1988), then Circuit Judge Bader–Ginsburg wrote:

> We hold that, under governing Supreme Court precedent, Mrs. Robinson had no constitutionally-shielded liberty interest in the restoration of her visiting privileges. We therefore reverse all district court rulings tied to the conclusion that she possessed such an interest. We further hold, in accord with the district court, that the Robinsons' first amendment/right [sic] to sustain a marriage relationship claim must be rejected.

*Id.*

**(3) Valid Penological Reason**

■ As in *Daniel*, this Court must accord wide-ranging deference to prison administrators "in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Daniel*, 29 F.Supp.2d at 1188 (*citing Bell v. Wolfish*, 441 U.S. 520, 547, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)). Likewise, prison officials must have the ability to anticipate security problems and adopt innovative policies as

means of addressing such problems and the courts must not become unnecessarily involved in the affairs of prison administrations. *Id.*; *Procunier v. Martinez,* 416 U.S. 396, 405, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974). Decisions regarding prison security are "peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters." *Pell v. Procunier,* 417 U.S. 817, 827, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974). With these principles in mind, the Court turns to the final prong of the equal protection analysis.

■■■ Plaintiffs question the reasoning of DOC 590.100's eligibility provision requiring inmates to be married prior to conviction. Dkt. # 40, p. 10. They argue that while DOC 590.100 lists criminal history, infractions and domestic violence as criteria, it fails to list the date of marriage. Thus, they reason that the date of marriage cannot be considered a legitimate penological reason for the policy. *Id.* Policy 590.100 and case law reflect otherwise.

DOC 590.100 specifically requires spouses to meet the additional qualifying requirement of having been legally married to the offender prior to conviction and any concurrently or consecutively served conviction. DOC 590.100, ¶ V.C.1. Moreover, it has been determined that DOC 590.100's eligibility provision requiring inmates to be married prior to incarceration for the current crime of conviction, "does not violate the Fourteenth Amendment's right to equal protection." *Daniel,* 29 F.Supp.2d at 1189. The *Daniel* Court held that restricting EFVs to inmates married prior to incarceration bears a rational relationship to a legitimate penological interest, stating:

Pursuant to revised DOP 590.100, only those spouses who were legally married to the offenders prior to incarceration for the current crime of conviction are eligible for extended family visitation. The stated purpose of DOP 590.100 is to "provide eligible inmates the opportunity to maintain relationships with authorized family members; to maintain marriages which existed prior to incarceration in DOC; and to provide an incentive for inmates to maintain a positive behavior and attitude while incarcerated."

EFVs, which usually occur in a mobile home-type facility adjacent to the prison grounds, necessarily present increased safety concerns. Prisoners are allowed to meet privately with their spouses and/or families in a setting that is less structured than that of a prison visiting room. Thus, because of the nature of the program, prison officials must retain discretion in selecting which prisoners will participate in the program and which prisoner will not. Restrictions on participation in the program are aimed at maintaining the safety and orderly operation the prison facilities and in protecting the safety of prison inmates, staff, and visitors.

[W]ith respect to those inmates married after incarceration, there is no existing family relation for the prison to attempt to preserve. Thus, given the safety risks inherent in the EFV program and the deference afforded prison officials in their decision concerning safety risks, the director's decision in this case to limit EFV participation to those inmates married prior to incarceration is rational. Further, Ms. Walter states that most of the marriages which occur after incarceration follow a "pen-pal" courtship. Thus, the spouse is not familiar with the inmates's behavior and may not be aware of the inmate's full criminal

history. Accordingly, Ms. Walter concludes the potential for violence against the unknowing spouse is a safety risk—a risk she is not willing to assume.

*Id.* at 1188–89 (internal citations omitted).

There is no dispute that Plaintiffs were married after Mr. Hill's conviction. Dkt. # 1–3, pp. 35, 44. Although the Hills assert that they were in a "loving, engaged, relationship for five years" prior to Mr. Hill's incarceration (Dkt. # 1–3, p. 35), the Court concludes that Defendants have provided a sufficient rationale and legitimate penological purpose for imposing the marriage date requirement. *See Daniel,* 29 F.Supp.2d at 1189 (internal citations omitted):

> A prison institution has a legitimate penological interest in ensuring the safety of prison inmates, staff and visitors. As Defendants have proffered legitimate penological interests which are furthered . by differentiating between inmates married after incarceration and inmates married prior to incarceration, such differentiation is not constitutionally infirm.

This Court finds no reason to disagree with this conclusion.

The Hills argue, however, that Defendants have made numerous exceptions to the "marriage before incarceration" requirement thus proving that Defendants have no legitimate penological interest in insisting that inmates be married before their incarceration dates. They point to four other inmates: Jesse Albritton, Aaron Simpson, Clyde McKnight and Jeffrey Pennick, as examples of inmates who were married after their convictions, yet have been approved for EFVs. Dkt. # 24; Dkt. # 25, pp. 14, 18–20. A review of the record demonstrates that these inmates are not similarly situated to the Hills.

Jesse Albritton's EFV application was approved based on an earlier approval made in error at an institution where Mr. Albritton was previously incarcerated when prison officials mistakenly based their decision on the date of his sentence rather than the date of his conviction. *See* Dkt. # 24–2, pp. 2–3 ("Apparently, prior approval at WSR & SCCC was based on I/M Albritton's date of sentence, 05/25/01, not his date of conviction, contrary to DOC Policy."). *Id.,* p. 3

Aaron Simpson's EFV privileges, which were previously terminated for an unstated reason, were reinstated by the Assistant Secretary of Prisons based on a history successful visits. Dkt. # 25, p. 14. The Secretary noted that the earlier approval given to the Simpsons to participate in visits and extended family visiting at other facilities had been made in error on the part of DOC. Dkt. # 25, p. 14.

The McKnights' application to participate in EFVs was denied, based on the policy that "offenders must have been married prior to the date of conviction in order to be eligible to participate in the program." Dkt. # 25, p. 16. The McKnights, like the Hills, were denied participation based on the date of their marriage.

The Pennicks's application reflects that they were married four days prior to Mr. Pennick's sentencing and were approved for EFV's following Mr. Pennick's psychological evaluation. *Id.,* p. 20.

Viewing the evidence in the light most favorable to the Hills, the Court concludes that it does not rise to a claim of systematic and invidious discrimination. While the equal protection clause requires that laws must be evenhanded as actually applied, a mere demonstration of inequality is not enough. *McQueary v. Blodgett,* 924 F.2d 829, 835 (9th Cir.1991). The Constitution does not require identical treatment. *Id.* "There must be an allegation of invidiousness or illegitimacy in the statutory scheme before a cognizable claim

arises: it is a 'settled rule that the Fourteenth Amendment guarantees equal laws, not equal results'." *Id.* citing *Personnel Adm'r v. Feeney,* 442 U.S. 256, 273, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979).[3]

Accordingly, the undersigned recommends that Plaintiffs' claim that they were denied equal protection based on their participation in a non-suspect class should be denied.

## B. Failure to Allege Personal Participation

 To make out a cause of action under section 1983, a plaintiff must plead that the defendants were acting under color of state law and deprived plaintiff of constitutional or federal rights. *Gibson v. United States,* 781 F.2d 1334, 1338 (9th Cir.1986). "A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir.1989). Further, "[s]upervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is the 'moving force of the constitutional violation.'" *Hansen v. Black,* 885 F.2d 642, 646 (9th Cir.1989) (quoting *Thompkins v. Belt,* 828 F.2d 298, 304 (5th Cir.1987)). "The requisite causal connection can be established ... by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." *Redman v. County of San Diego,* 942 F.2d 1435, 1448 (9th Cir.1991) (en banc) (quoting *Johnson*

*v. Duffy,* 588 F.2d 740, 743–44 (9th Cir. 1978)).

 Defendants argue that they should be dismissed from this action because they have been named as defendants in their supervisory positions alone. Dkt. # 5, pp. 6–7. They argue that the only allegation specifying even remote involvement for any of them is that Associate Superintendent Roberts followed the Correctional Program Manager's recommendation to deny EFV's. *Id. citing* Dkt. # 1–3, p. 37.

Plaintiffs allege that Defendants Vail and Pacholke are proper parties because they have been employees of the DOC for years, took oaths to uphold the constitutions of the United States and Washington state, and had numerous opportunities to rectify the constitutional wrong. Dkt. # 25, pp. 8–9. Plaintiffs allege that Defendant Roberts was an active participant in violating their constitutional rights to equal protection. *Id.,* p. 9. On May 31, 2007, Defendant Roberts disapproved Plaintiff's EFV application, noting "does not meet policy requirements." Dkt. # 1–3, p. 65–66.

 A section 1983 suit cannot be based on vicarious liability alone, but must allege that the defendant's own conduct violated the plaintiff's civil rights. *City of Canton v. Harris,* 489 U.S. 378, 385–90, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). Therefore, Defendants Vail and Pacholke are entitled to summary judgment on the additional ground of lack of personal participation.

The evidence relating to Defendant Roberts reflects that she was personally in-

---

3. *See also, Polakoff v. Henderson,* 370 F.Supp. 690, 694–95 (N.D.Ga.1973), *aff'd,* 488 F.2d 977 (5th Cir.1974) (uniform policies are not required at each and every penitentiary within the federal prison system); *Cooper v. Elrod,*

622 F.Supp. 373 (N.D.Ill.1985) (Equal Protection Clause does not require conditions, practices and rules at county and state correctional facilities to be identical).

volved in denying Mr. Hill's application. Dkt. # 1–3, p. 65–66. However, as noted above, the Court finds that she is entitled to summary judgment on the ground that Plaintiffs have failed to show the violation of a constitutional right.

## C. Qualified Immunity

Defendants also urge that they are entitled to qualified immunity because Plaintiffs have not alleged violation of a clearly established constitutional right and the pre-conviction eligibility requirement in DOC Policy 590.100 was expressly upheld in *Daniel v. Rolfs, supra.*

As the undersigned has found that the Hills have not alleged a violation of a constitutional right, the Court need not reach this issue.

## D. Eleventh Amendment Immunity

■ Defendants also urge that the Eleventh Amendment bars suit against the DOC because neither a State nor its officials acting in their official capacities are "persons" under § 1983. The Hills argue that the DOC waived any claim to Eleventh Amendment immunity because the Defendants removed this case from state court. Dkt. # 40, p. 18.

■ The Eleventh Amendment reads in relevant part:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. Amend XI. Under the Eleventh Amendment, therefore, a state is not subject to suit by its own citizens in federal court. *Edelman v. Jordan,* 415 U.S. 651, 662–63, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).

■ Under the Eleventh Amendment to the United States Constitution, a state is not subject to suit by its own citizens in federal court. *Edelman,* 415 U.S. at 662–63, 94 S.Ct. 1347. A state agency, as an arm of the state, is immune from suit in federal court under the Eleventh Amendment as well. *Howlett v. Rose,* 496 U.S. 356, 365, 110 S.Ct. 2430, 110 L.Ed.2d 332 (1990); *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 70, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). An entity that has Eleventh Amendment immunity also is not a "person" within the meaning of 42 U.S.C. § 1983.[4] *Howlett,* 496 U.S. at 365, 110 S.Ct. 2430.

■ A lawsuit brought "against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will,* 491 U.S. at 71, 109 S.Ct. 2304. As such, "it is no different from a suit against the State itself." *Id.* Accordingly, neither a state nor its officials acting in their official capacities are "persons" for the purposes of 42 U.S.C. § 1983. *Will,* 491 U.S. at 71, 109 S.Ct. 2304. The only exception to this general rule is when a state official is sued in his official capacity for prospective injunctive relief. *Doe v. Lawrence Livermore National Laboratory,* 131 F.3d 836, 839 (9th Cir.1997).

■ Plaintiffs' reliance on *In re Lazar,* 237 F.3d 967 (9th Cir.2001) is inapposite. That case stands for the very narrow proposition that when a state or an "arm of the

4. Section 1983 reads in relevant part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1983.

state" files a proof of claim in a bankruptcy proceeding it waives its Eleventh Amendment immunity with regard to the bankruptcy estate's claims that arise from the same transaction or occurrence as the state's claim. *Id.,* p. 978. Moreover, as noted by Defendants, removal of a case to federal court does not waive immunity. *See e.g. Will,* 491 U.S. 58, 109 S.Ct. 2304, 2308, which was originally filed in state court and removed to federal court.

Accordingly, the Hills claims against the DOC and as to the Hills claims for damages against Defendants in their official capacities must be dismissed.

## V. CONCLUSION

For the foregoing reasons, the Court recommends that the Defendants' motion for summary judgment (Dkt. # 5) be **GRANTED** and that Plaintiffs' cross motion for summary judgment (Dkt. # 40) be **DENIED.** A proposed order accompanies this Report and Recommendation. Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed.R.Civ.P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **February 20, 2009,** as noted in the caption.

DATED this 30th day of January, 2009.